# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

HARVEY GRAHAM,

                                          Plaintiff,

              -vs-

                                                    DECISION AND ORDER
JOHN GIBSON, *Medical Dentist #3, in his*              04-CV-6088-CJS-MWP
*Individual and Official Capacity*,

                                          Defendant.


## APPEARANCES

For the plaintiff:                Harvey Graham, *pro se*
                                  92-A-0507
                                  Sing Sing Correctional Facility
                                  354 Hunter Street
                                  Ossining, NY 10562

For the defendant:                Emil J. Bove, Jr., A.A.G.
                                  New York State Attorney General's Office
                                  144 Exchange Boulevard, Suite 200
                                  Rochester, NY 14614


## INTRODUCTION

**Siragusa, J.** Plaintiff's civil rights complaint alleges that the defendant, Dr. John

Gibson, was deliberately indifferent to his serious medical need, while Plaintiff was an

inmate of the Elmira Correctional Facility ("Elmira"). Plaintiff contends that Dr. Gibson

removed, at Plaintiff's request, a lower right wisdom tooth, but left the broken-off root tips

in his jaw to either heal, or surface on their own for later removal. As a result, Plaintiff

maintains he suffered pain in violation of the Eighth Amendment proscription against cruel

and unusual punishment. Before the Court are Dr. Graham's motion (Docket # 32) for summary judgment, and Plaintiff's cross-motion (Docket # 42), also seeking summary judgment. For the reasons stated below, Dr. Graham's motion is granted, and Plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 on March 4, 2004, alleging that Dr. Gibson violated his Eighth Amendment rights by deliberate indifference to his serious dental need, in connection with care he provided in 2003 and 2004 at Elmira. In that regard, Plaintiff claims that: pieces of one of his lower right wisdom teeth broke off and remained in his gum during an extraction Dr. Gibson performed on October 10, 2003, at Elmira; Dr. Gibson refused to remove the pieces, and as a result, he suffered unnecessary pain, swelling and discomfort. Plaintiff also claims that, as a result, he suffered a punctured left ear drum. In compliance with Local Rule of Civil Procedure 56.1, both parties have filed statements of undisputed material facts. Pursuant to those statements, the following facts are undisputed, except where otherwise indicated.

Dr. Gibson is licensed by the State of New York as a dentist and has practiced dentistry for over 28 years. He was employed by the New York State Department of Correctional Services ("DOCS") as a dentist at Elmira in 2003 and 2004 and remains so employed today.

When Dr. Gibson first examined Plaintiff on August 6, 2003. At this time,  Plaintiff complained of pain on biting and told Dr. Gibson that one of his wisdom teeth on the lower right rear side of his mouth, identified as tooth number 31, was sensitive to cold. Dr. Gibson

examined the tooth and observed questionable tenderness to percussion, no swelling and

no cavity. In Dr. Gibson's opinion, tooth number 31 was a healthy tooth. Consequently, Dr.

Gibson recommended that the condition of the tooth be observed for a few weeks,  and

he told Plaintiff if his symptoms worsened or became acute, to submit a slip for a call out.

Dr. Gibson also told Plaintiff that extracting the tooth was not a good choice. (Gibson Decl.

¶ 4; Ex. A[1] to Gibson Decl. at 48-50.)

On August 19, 2003, Plaintiff was seen by a dental assistant at Elmira after he

submitted a call out indicating he wanted the tooth extracted. However, when he arrived

at the Elmira dental clinic, he refused the extraction and signed a refusal slip. (Gibson Decl.

¶ 5; Ex. A to Gibson Decl. at 47-48.) On October 10, 2003, plaintiff appeared at the dental

clinic again and stated he desperately wanted the tooth extracted. Dr. Gibson explained

the procedures, alternative treatments, risks, and possible complications to Plaintiff before

the extraction, after which Plaintiff signed a consent form. When Dr. Gibson extracted the

tooth, several small pieces of the tooth's root tips which were fused to his jaw bone broke

off. (Gibson Decl. ¶ 5.) Since normally "retained" root tips heal in place and never cause

a problem to the patient after healing,  Dr. Gibson decided to not remove the pieces but

rather to wait and see if they would heal. Dr. Gibson also concluded that removing the

pieces at that time would have caused significant pain and trauma to Plaintiff's soft tissue

and jaw because removal of root fragments requires the drilling of bone and prying.

Moreover, Dr. Gibson believed that removal of the root tips would increase the likelihood

---

[1]Exhibit A to Dr. Gibson's declaration was filed manually per the Order of U.S. Magistrate Judge Marian Payson, since it contains medical information protected by the E-Government Act of 2002, Pub. L. No. 107-347 (Dec. 17, 2002).

of a painful condition called dry socket. (Gibson Decl. ¶ 5.) However, Dr. Gibson did not

take x-rays of Plaintiff's mouth following the extraction Dr. Gibson advised Plaintiff he did

not think the retained root tips would pose a problem, and prescribed antibiotics and fifteen

Ibuprofen tablets (600 milligram each). (Def.'s Response to Pl.'s Statement of Facts,

Docket No. 44, at 3-4.)   This approach was in accord with accepted dental practice in

Elmira, New York at the time. (Gibson Decl. ¶ 5; Ex. A to Gibson Decl. at 46, 48.)

When Dr. Gibson next saw Plaintiff on October 17, 2004, for a post-operative

examination, the root tips had not surfaced. He smoothed out a sharp edge in the socket

in the alveolar[2] area of Plaintiff's jaw bone from which the tooth had been removed and

instructed Plaintiff to continue to use warm saline solution and Ibuprofen for his discomfort.

(Gibson Decl. ¶ 7; Ex. A to Gibson Decl. at 45.) Dr. Gibson saw plaintiff again in the dental

clinic on October 22, 2003, at which time plaintiff reported some improvement, and Dr.

Gibson observed that gingival tissue[3] was beginning to grow over the root cavity. Dr.

Gibson told Plaintiff that, at some point, the root tips should surface and then they could

be removed with little trauma.  (Gibson Decl. ¶ 8; Ex. A to Gibson Decl. at 45.)

When  Dr. Gibson saw Plaintiff on October 29, 2003, the tissue had completely

healed  over  the  extraction  area.   However, Plaintiff complained about pain, which,

according to Dr. Gibson, was inconsistent with the healing that had occurred. Plaintiff told

---

[2] "Of or pertaining to an alveolus (plural, alveoli), a small cavity or pit, as a socket for a tooth." Mammal Glossary, Laboratory for Environmental Biology, University of Texas at El Paso (*available at* http://www3.utep.edu/leb/keys/glossary.htm) (last viewed Oct. 25, 2007).

[3] "The tissue surrounding the alveolar bone and teeth usually referred to as the gums." Glossary, The Dr. Samuel D. Harris National Museum of Dentistry (In association with the Smithsonian  Institution)  (*available  at*  http://www.dentalmuseum.umaryland.edu/ school-tours/glossary/index.cfm) (last viewed Oct. 25, 2007).

Dr. Gibson that medical staff had prescribed Oxycontin, a synthetic opiod, at sick call, but Dr. Gibson indicated to plaintiff that 600 milligram tablets of Ibuprofen should be adequate. (Gibson Decl. ¶ 8; Ex. A to Gibson Decl. at 45.)

Complaining of pain in the extraction area, Plaintiff was seen on November 12, 2003, by Manesh Mewar, D.D.S. Dr. Mewar's examination indicated slight tenderness to touch. Plaintiff claimed he was on antibiotics, so Dr. Mewar called the pharmacy and checked plaintiff's Ambulatory Health Record. He found no prescription for antibiotics. Plaintiff stated he wanted the root tips removed by an oral surgeon.  Dr. Mewar told him the root tips would be removed when they surfaced, and Dr. Mewar noted that Plaintiff was pushy and argumentative.  Dr. Mewar gave Plaintiff a prescription for antibiotics and 600 milligram tablets of Ibuprofen. (Ex. A to Dawson Decl., Docket No. 35, at 44.)

Dr. Gibson's next contact with plaintiff was on November 25, 2003, at which time Plaintiff complained of pain when he was eating.  Dr. Gibson noted that while the tissue had closed over the extraction site, there was some puffiness over the root tips.  Plaintiff told Dr. Gibson he wanted to see an oral surgeon, but Dr. Gibson responded that Plaintiff should be able to get along until the tips surfaced. Dr. Gibson then prescribed fifteen 600 milligram tablets of Ibuprofen that day, and again on December 4, 12, 18 and 29, 2003, and January 6 and 12, 2004.  (Gibson Decl. ¶ 9; Ex. A to Gibson Decl. at 40, 43-44.)

Plaintiff wrote letters to Dr. Gibson, Elmira Nurse Administrator Mary Hopkins, and Elmira Deputy Superintendent Dana Aidala, dated October 23, 2003,  November 3, 2003, November 25, 2003, and December 3, 2003, complaining about his condition and asking to be referred to an oral surgeon. Copies of Plaintiff's letters are attached Dr. Gibsons's Declaration as Exhibits C, D, E, and F. Plaintiff stated in a November 4, 2003, letter to Dr.

Gibson that the ibuprofen provided only temporary relief of the pain, and after the medication wore off, the pain returned. (Ex. 3 to Graham Mem. of Law, Docket No. 42, at 13.)

On December 12, 2003, Dr. Gibson advised plaintiff that on December 2, 2003, a referral had been made to an oral surgeon and that it had been approved on December 9, 2003, by William Dawson, D.D.S., DOCS' regional dental director for the Wende and Elmira Hubs.  Dr. Gibson informed Plaintiff that the he was now on a waiting list for oral surgery. In the meantime, Dr. Gibson gave Plaintiff another prescription for Ibuprofen. (Gibson Decl. ¶ 11; Ex. A to Gibson Decl. at 42-43.) Subsequently on January 26, 2004, the root tips were extracted by Dr. O'Keefe[4] at Attica Correctional Facility. (Ex. A to Gibson Decl. at 41.)  On January 27, 2004, and February 4, 2004, Dr. Gibson examined plaintiff and the area of the surgery had fully healed.  (Gibson Decl. ¶ 12; Ex. A to Gibson Decl. at 40.)

According to Dr. Dawson, Plaintiff's assertion that he suffered a punctured *left* ear drum as a result of the extraction of tooth number 31 on the lower *right* side of his mouth is not possible. Dr. Gibson noted that Plaintiff's medical record includes complaints of right and left ear pain and medical treatment on December 9 and 29, 2003, January 6, 2004, and June 6, 2004. Dr. Dawson asserts that there could be any number of causes of the perforated left ear drum, but in his opinion, Dr. Gibson's care of tooth number 31 on the lower right side of Plaintiff's mouth was not one of them. (Dawson Decl. ¶ 7; Ex. A to Gibson Decl. at 10, 15, 27-31, 40, & 43-44.)

---

[4]Dr. O'Keefe's full name does not appear in the documents submitted by the parties.

In an Order entered on September 27, 2005, the Court stayed the case on Dr. Gibson's attorney's application pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. app. § 522(b) (2005). At Plaintiff's request, the Court reconsidered its Order staying the action and, in a Decision and Order dated November 15, 2006, affirmed the stay.

## STANDARDS OF LAW

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that,

by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v.*

*New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### *Irby Notice*

In their Notice of Motion, Defendants included the following language, pursuant to

*Irby v. New York City Transit Authority*, 262 F.3d 412 (2001):

> **PLEASE NOTE that pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon your complaint but you must respond, by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial.  Any factual assertions arising out of the exhibits attached to defendants' counsels affidavit will be accepted by the District Judge as being true unless you submit affidavits or other documentary evidence contradicting those assertions. If you do not so respond, summary judgment, if appropriate, may be entered against you. If summary judgment is granted against you, your case will be dismissed and there will be no trial.**
>
> **NOTE also that Local Rule 56 of the Western District of New York requires that you must include a separate short and concise statement of any material facts as to which you contend there exists a genuine issue. In the absence of such a statement, all material facts set forth in defendants' Rule 56 Statement will be deemed admitted.**

(Def.'s Notice of Motion at 1-2 (emphasis in original).)

### *Deliberate Indifference to a Serious Medical Need*

In this case Plaintiff is asserting an Eighth Amendment medical claim. The standard

for such a claim is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element

ensures that the defendant prison official acted with a sufficiently culpable state of mind.

Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted). As the Second Circuit also observed in *Chance*,

[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, *see Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984) ("severe pain" due to infected tooth), the deterioration of the teeth due to a lack of treatment, *see Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three-week delay in dental treatment aggravated problem), or the inability to engage in normal activities, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff complained that he was unable to eat properly); *cf. Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding that "dental

needs—for fillings, crowns, and the like—are serious medical needs as the law defines that term"), *vacated on other grounds*, 804 F.2d 207 (2d Cir. 1986).

*Chance*, 143 F.3d at 703.

## ANALYSIS

### *Plaintiff's Arguments*

Plaintiff's memorandum of law makes several arguments in support of his application for summary judgment. First, he states that Dr. Gibson,

> decided not to make any further attempts in removing the remaining broken pieces of root tips and thereof wanted to wait to see if they would hear or work their way out over time. But, however in the medicate [sic] instance of not knowing the actual out-come. Defendants [sic] fail to provide plaintiff with procedural security health x-ray process examination to secure the possibility of any over night unexpected inner bleeding defects.

(Pl.'s Mem. of Law at 4; further argument at 6.) In support of his argument that Dr. Gibson's failure to take x-rays was an Eight Amendment violation, Plaintiff cites to *Beycrback v. Sears*, 49 F.3d. 1324 (8th Cir. 1995). In that case, the Eighth Circuit reversed a district court decision denying the defense motion for summary judgment, writing that,

> when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured "by reference to the *effect* of delay in treatment." *Hill*, 40 F.3d at 1188; *see also Wilson*, 501 U.S. at 303 (harmfulness of the deprivation to the prisoner is part of objective inquiry in an Eighth Amendment claim). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188 (emphasis added). We recently recognized these principles in a case factually very similar to this case, concluding that an inmate failed to satisfy the objective component of the test because the inmate failed to submit "sufficient evidence that defendants ignored 'an acute or escalating situation' or that delays adversely affected his prognosis, given the type of injury in this

case." *Sherrer v. Stephens*, 1994 U.S. App. LEXIS 33133, *2, No. 94-2248
(8th Cir. Nov. 23, 1994) (evidence insufficient where treatment for a broken
finger was delayed, but ice, painkillers, and x-rays eventually given) (quoting
*Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (other citation
omitted)).

*Beyerbach*, 49 F.3d at 1326. As was the case in *Beyerbach*, Plaintiff has not submitted

verifying medical evidence to establish that Dr. Gibson's failure to take an x-ray resulted

in a detrimental effect of delay in treatment.

> Plaintiff also contends that his
>
> claim of deliberate indifference resulted from the intentional denial by
> defendant, John Gibson, for the necessary and serious Dental/Medical
> needs which was unnecessary, [sic] to have had to endured [sic] such
> infliction of easy to have been cured pain, which is prescribed [sic] by Eighth
> Amendment. *Bell v. County of Washington County Lowe S.D. Iowa*, 937 F.2d
> 1340, *Supra*, (1990); *Yarbaugh v. Roach*, 736 F. Supp. 318 (DDC 1990);
> *also see Barney v. Haverman*, 879 F. Supp. 775, 778 (W.D. Mich. 1995);
> Gibson, Declaration paragraph 2, 3.

(Pl.'s Mem. of Law at 4.) In *Bell v. Stigers*, 937 F.2d 1340 (8th Cir. 1991), the Court of

Appeals held that "[i]n a section 1983 action, mere negligence does not support a claim of

deprivation of rights under either the Eighth Amendment, *Estelle*, 429 U.S. at 105-07, or

the Fourteenth Amendment, *Davidson v. Cannon*, 474 U.S. 344, 348, 88 L. Ed. 2d 677,

106 S. Ct. 668 (1986)." *Bell*, 937 F.2d at 1345. The Eight Circuit reversed the district

court's decision denying the defendants summary judgment and granted judgment to

defendants. In the case at bar, Dr. Gibson has shown that at best this is a negligence case,

if that. Accordingly, pursuant to the rule discussed in *Bell*, Plaintiff's claim is insufficient to

support a judgment under § 1983 for deprivation of a constitutional right.

Plaintiff further contends that "Defendant failed to have completed the surgery without error ness [sic] after effects." (Pl.'s Mem. of Law at 5.) He cites in support: "*People v. Shafer*, 86 F.3d 90, (C.A. 7 (Ill.) 1996). Gibson[']s statement of material facts paragraph 2 and 3, Gibson[']s Declaration paragraph-5." (*Id.*) The case reported at 86 F.3d 90 is actually *Pope v. Shafer*, in which the Seventh Circuit affirmed a jury verdict rendered against a corrections officer. However, the case involved, not a claim of deliberate indifference to a serious medical need, but, instead, a claim that prison officials failed in their "duty to take reasonable steps to insure the safety of inmates, including harm done by one inmate to another. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1976-77, 128 L. Ed. 2d 811 (1994)." *Pope*, 86 F.3d at 91-92. Thus, this case does not provide support for Plaintiff's Eighth Amendment claim. Further, Plaintiff's contention in this regard appears to the Court to be merely a claim of negligence, which, as stated above, is not a constitutional claim. Plaintiff also maintains s that he was not informed about the possibility that the root tips would remain in his jaw until after the surgery. (Pl.'s Mem. of Law at 5.) Dr. Gibson disputes this, but in any event, even if Plaintiff's version is true, his claim would amount again to one for medical malpractice and not a constitutional claim under § 1983.

Citing to *Hunt v. Dental Dep't.,* 865 F.2d 198 (9th Cir. 1988), Plaintiff contends that the delay in removal of the root tips constitutes deliberate indifference. In *Hunt*, the Court of Appeals reversed a grant of summary judgment. In that case, the plaintiff prisoner lost his dentures during a prison riot and, despite requests for their replacement, he was not treated for nearly three months. In reversing a grant of summary judgment, the Ninth Circuit reasoned that the delay was more than an occurrence of neglect, and that it could

be concluded that the delay was deliberate and that it caused plaintiff to suffer unnecessary infliction of pain. Here, however, there was no delay in treatment. To the contary, Dr. Gibson and Dr. Mewar continued to treat Plaintiff. The fact that Plaintiff disagreed with the treatment course chosen, does not amount to a denial of a type addressed in *Hunt*.

With respect to his ear drum, Plaintiff contends that he can call an individual he identifies only as "Dr. Yim," who evidently relayed to Plaintiff "a speculated presumption." (Pl.'s Mem. of Law at 9.) He refers specifically to his November 26, 2003, letter to Nurse Administrator Hopkins, attached as Exhibit 8 to his memorandum of law, in which he states Dr. Yin informed him that he had a hole in his left ear. Also in that exhibit, are letters from Plaintiff dated August 4 and 13, 2003, in which he wrote that the pain he was experiencing was keeping him from sleeping. In what appears to be a second page of a letter to Nurse Administrator Hopkins, Plaintiff states that Dr. Yim has informed him that the root tips needed to be removed, and that Plaintiff was experiencing pain when eating, making it difficult to chew his food. (*Id.*)  Federal Rule of Civil Procedure 56 requires the submission of evidentiary proof in admissible form. Plaintiff's recitation of Dr. Yim's speculation is not sufficient for this purpose.

### Defendant's Arguments

Dr. Gibson argues that the only basis for Plaintiff's complaint is a difference in opinion as to whether the broken-off root tips should have been removed sooner. He further argues that a difference of opinion between a plaintiff and a defendant "does not give rise to a constitutional right or sustain a claim under § 1983." (Def.'s Mem. of Law at

5-6.) In support, he relies on, *inter alia*, *Rodriguez v. Cheng Yin*, 328 F. Supp. 2d 414,

(W.D.N.Y. 2004). In *Rodriguez*, the district court wrote that,

> [e]ven viewing the record in the light most favorable to plaintiff, and drawing
> all reasonable inferences in his favor, it is clear that this case presents no
> more than a disagreement between plaintiff and defendants over his medical
> condition and the best course of treatment for that condition.  That does not
> amount to an Eighth Amendment violation.

*Rodriguez*, 328 F. Supp. 2d at 416-17. As the Court pointed out above, a difference of

opinion about how an inmate should be treated does not support to a constitutional claim

under § 1983. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Furthermore,

DOCS medical staff continued to see and treat Plaintiff, on numerous occasions: October

17, 22 and 29, 2003; November 12 and 25, 2003. Dr. Gibson continued to write

prescriptions for pain relievers. Finally, although later than Plaintiff would have liked, DOCS

arranged for the surgical removal of the tips. The Court finds no material issue of fact and

determines that the evidentiary proof in admissible form submitted in support of Dr.

Gibson's motion demonstrates  his entitlement to judgment as a matter of law.[5]

## CONCLUSION

For the foregoing reasons, Dr. Graham's motion (Docket # 32) for summary

judgment is granted and Plaintiff's cross-motion (Docket # 42), also seeking summary

judgment, is denied. The Clerk is directed to enter judgment for Defendant. The Court

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not

---

[5]In light of this disposition, the Court need not address Dr. Gibson's second argument in support of summary judgment, that the claims against Dr. Gibson in his official capacity are prohibited by sovereign immunity. *Employees of Dep't of Pub. Health and Welfare v. Dep't of Pub. Health and Welfare*, 411 U.S. 279, 280 (1973).

be taken in good faith, and therefore denies leave to appeal in forma pauperis. Further requests to proceed on appeal *in forma pauperis* must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated:   November 8, 2007
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Court